E-FILED
Tuesday, 30 September, 2014 03:42:19 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY HARRIS, et al., | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | |
| v. | ) | 07-CV-3225 |
| | ) | |
| DR. LOWELL BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

The plaintiffs are current or former inmates of the Illinois Department of Corrections. They contend that too much soy is served in the prison food, exposing them to a serious threat to their current and future health. Cross-summary judgment motions are pending on that issue, along with competing motions to strike experts and various other motions.

The Court has read all of the parties' submissions. In sum, the Eighth Amendment standard is a high hurdle, and the plaintiffs' evidence falls short. A jury could not find that the soy in the prison diet presents a substantial risk of serious harm to the plaintiffs' current or future health, even accepting the opinions of the plaintiffs' experts that soy can cause or exacerbate some

1

health problems. The defendants' motions for summary judgment will therefore be granted. A status conference will be scheduled to discuss what issues remain in the case, if any.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). At this stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

In the case management order of November 16, 2011, the court identified the following pivotal issues, which are the court's road map for this order:

1. As articulated by plaintiffs' counsel, that while soy is generally regarded as nutritious in limited quantities, in diets that contain soy in large quantities, the soy has a toxic effect on the human body that is a serious threat to the health and safety of the plaintiffs, and the defendants are deliberately indifferent to that harm;

2. The plaintiffs have an allergy to soy products that gives rise to a serious medical need and the defendants are deliberately indifferent to that need;

3. There is an available medical test for a soy allergy that the defendants do not and will not administer to determine if an inmate indeed is allergic to soy.

**I. The plaintiffs have not established that the soy in the prison diet, as a general matter, presents a substantial risk of serious harm to their current or future health absent an existing, serious medical condition that contraindicates soy, as determined by current and generally accepted professional practices.**

"[T]he Eighth Amendment 'forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration.'" *Lee v. Young*, 533 F.3d 505,

511 (7th Cir. 2008)(perfection was not required in eliminating exposure of asthmatic inmate to second-hand smoke)(*quoting Anderson v. Romero,* 72 F.3d 518, 524 (7th Cir.1995)(prisons not required to take "the best" approach of instituting universal precautions to prevent the spread of HIV). In order to prevail, the plaintiffs must have evidence that the soy in the prison diet presents a substantial risk of serious harm to their current or future health. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)(being "incarcerated under conditions posing a substantial risk of serious harm" states an Eighth Amendment claim).

This case is based on the allegation that the soy served is excessive. Calculating that amount seems like it should be easy, but apparently not so. The two experts differ wildly on their estimates. They do seem to agree that the most precise way to calculate the amount of soy served in the prison would be to take each meal and burn it under controlled conditions for a chemical analysis. (Braunschweig Dep. p. 156.) That was not done.

The plaintiff's expert, Sylvia Onusic, puts the number at 53-72 grams of "soy protein" per day and 55-120 grams of "soy product" per day. (Onusic expert report, d/e 441, p. 1.) But then later in the same paragraph she estimates the amount of soy as "100 grams minimum," though what she means is

not explained.  100 grams of soy *protein* per day?  Or, 100 grams of soy *product* per day?  A soy "product" has ingredients other than soy, and different soy products contain different amounts of soy protein.  (Onusic Dep. p. 70).

    Another problem with Ms. Onusic's estimate is that she admits that she included the water weight used to hydrate the textured vegetable protein when she calculated the percentage of textured vegetable protein in an entrée.  According to the record, textured vegetable protein is a soy product consisting of about 50% of dry soy protein and the rest of other dry ingredients.  Water needs to be added to the dry mixture to hydrate the textured vegetable protein before it is used in recipes, the court presumes much like soaking dried beans in water before using the beans in a recipe.

    Ms. Onusic reasons that, because water is required to hydrate the dry textured vegetable protein, the water should be included when calculating the percentage of textured vegetable protein in an entree.  This does not make sense.  Say one-fourth cup of dry textured vegetable protein has 12 grams of protein.  [www.bobsredmill.com/tvp-textured-veg_protein.html](www.bobsredmill.com/tvp-textured-veg_protein.html) (nutritional information for Bob's Redmill High Protein Textured Vegetable Protein).  After adding water, the resulting product would weigh more than the textured vegetable

protein alone but would still contain 12 grams of protein.  Ms. Onusic's approach appears to significantly inflate the percentage of soy product and soy protein in the entrees.

In contrast, the defendants' expert, Carol Braunschweig, puts the number at an average of 16.4 grams of soy protein per day.  The primary weakness with Ms. Braunschweig's calculations is her assumption that the protein content in a given prison entrée matches the protein content listed for the same entree in a research database maintained by the University of Minnesota based on the USDA's food compilations.  (Braunschweig Dep. p. 55-56.)  Thus, Ms. Braunschweig assumes that the polish sausage served in the prison has the same (or comparable) amount of soy protein as the polish sausage listed in the research database.  Ms. Braunschweig admits that her approach is an estimate, but she believes an estimate based on reasonable assumptions.  She contends, "So you could argue that there's more or there's less.  This is using the best science out there based on the USDA database of foods." (Braunschweig Dep. p. 97).  The plaintiffs also point out that some of Ms. Braunschweig's averages are mathematically incorrect.

Frankly, the court does not have enough information to replicate any of these calculations

and therefore cannot truly understand how each expert reached their conclusions.  Thankfully, the court does not need to referee this battle of the experts, because even accepting the plaintiffs' higher estimate of 53 to 72 soy protein grams per day, the plaintiffs have not established that this amount presents a substantial risk of serious harm to their present or future health under Eighth Amendment standards.

The plaintiffs do have some evidence that soy protein can be associated with thyroid dysfunction, particularly hypothyroidism and can make it more difficult to treat existing hypothyroidism.  Two of the plaintiffs have thyroid disorders, Larry Harris and Gilbert Sanabria.  Mr. Harris has already been prescribed a soy-free diet.

For example, a 1965 New England Journal of Medicine article recounts incidences of goiter and hypothyroidism in infants fed soybean formula until iodide was added to the formula.  Pinchera, M.D., et al. (1965), Thyroid Refractoriness in an Arhyreotic Cretin Fed Soybean Formula, N. Eng. Journ. Med. 273:83-87 (1965).  That article was a case study of an infant with congenital hypothyroidism who, despite treatment, continued to have hypothyroidism while on soy formula.  Id.  A more recent study confirmed that soy formula can "complicate[] [the] management of congenital hypothyroidism."

Conrad, S.C., M.D., et al. (2004), Soy Formula Complicates Management of Congenital Hypothyroidism, *Arch. Dis. Child,* 89:37-40.

    The plaintiffs' experts also cite a 1991 study by Japanese researchers suggesting that eating 30 grams of soybeans every day for three months suppressed thyroid function and caused goiters in healthy persons. Ishizuki Y, et al. (1991), The Effects on the Thyroid Gland of Soybeans Administered Experimentally in Healthy Subjects," *Nippon Naibunpi Gakkai Zasshi,* 67: 622-629. Along the same lines, a 2011 study showed that ingesting 30 grams of soy protein *plus* 16 milligrams of soy phytoestrogen per day increased by threefold the risk of developing hypothyroidism. Sathyapalna T et al. (2011), The Effect of Soy Phytoestrogen Supplementation on Thyroid Status and Cardiovascular Risk Markers in Patients with Subclinical Hypothyroidism: A Randomized, Double-Blind, Crossover Study, *J. Clin. Endocrinol. Metab.* 96: 1442-1449.

    Another case study showed that taking a soy protein supplement concurrent with a hypothyroid medicine interfered with the effectiveness of the hypothyroid medicine. Spacing the two apart reduced the interference. Bill, DS, et al. (2001), Use of Soy Protein Supplement and Resultant Need for

Increased Dose of Levothyroxine, *Endocr. Pract 2001* May-Jun 7(3):193-4.

In 2006, the American Heart Association issued an advisory concluding that the cardiovascular benefits of soy which had been originally touted had not been confirmed in later studies, despite the federal regulation allowing food manufacturer's to continue touting those benefits.  The AHA advisory also concluded that soy had not been proven to prevent certain cancers and evidence on that issue was "meager and cautionary with regard to a possible adverse effect."  Nevertheless, the article concludes that, while soy isoflavone supplements were not recommended, soy products like tofu "should be beneficial to cardiovascular and overall health . . . .," particularly if replacing high-fat animal protein.  Sacks, M.D. (2006), Soy Protein, Isoflavones, and Cardiovascular Health, *Journ. Amer. Heart Assoc.* 113:1034-1044.

The parties seem to agree that soy contains oxalate, and that individuals with kidney stones are advised to limit their oxalate exposure in foods.  The plaintiff's expert, William Shaw, PhD, opines that oxalates can cause a host of other problems and, he believes, have caused all of the plaintiffs' ailments, from arthritis, varicose veins, deterioration of the teeth, and heart disease, to thyroid disorders.  (Dr. Shaw expert report, d/e 429).  However, he also

admits that oxalate is found naturally in many foods, not just soy, so there is no way to tell where the oxalate in a person's body comes from. (Dr. Shaw's Dep. pp. 14-19.) In fact, avoiding all foods with oxalates would be difficult, and the federal government does not require labels to inform consumers how much oxalate is contained in a food. Id.

One of the plaintiff's expert, Dr. Brownstein, a family practitioner, states in his expert report that he advises his patients with thyroid problems to avoid non-fermented soy altogether. (Dr. Brownstein Report, d/e 438, p. 3.) He goes further in his deposition, stating that he tells *all* of his patients to avoid non-fermented soy.[1] Dr. Brownstein opines that soy is associated with or causes nutritional deficiencies, skin rashes, gastrointestinal problems, and thyroid disorders. He believes that soy should be removed completely from the prison diet. *Id.* p. 4. Dr. Brownstein bases his opinion on the assumption that the prisoners are receiving 100 grams of soy protein per day, but it is reasonable to assume that his opinion would be the same even if his assumption was the 53-72 grams of soy per day estimated by the plaintiff's expert.

Yet, even accepting these studies and the opinions of the plaintiffs' experts, the most that can

---

[1] The parties seem to agree that non-fermented soy is the kind of soy served in the prison diet.

be said is that the safety of soy is a topic of current debate and study and has been for some time. That is not enough to find an Eighth Amendment violation. More than scientific studies and theories are needed to show a serious risk under Eighth Amendment standards. The risk must be one that "society considers . . . so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (7th Cir. 1993)(emphasis in original). "[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

The U.S. Constitution does not require prisons to be trendsetters in nutrition or health. For example, a 1991 class action by prisoners in this Circuit challenging exposure to second-hand smoke did not even survive the notice pleading stage, even though good evidence of the adverse health effects from environmental smoke had existed for years. *Steady v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991). Acknowledging that evidence, the Seventh Circuit noted that scientific debate remained, and, in any event, second-hand smoke in the prisons could hardly be considered punishment when exposure to second-hand smoke was common throughout the United States and the world. 941 F.3d at 500. Today, of course, is a different story. Smoking is banned in most public places in Illinois, including

prisons. A prisoner challenging exposure to second-hand smoke today would have a much better chance of success, based on current scientific data and current societal norms.

In short, our society today simply does not see soy protein as a risk to the general population, much less a serious risk. To the contrary, the federal government still allows food manufacturers to claim health *benefits* on food labels for foods containing at least 6.25 grams of soy protein per serving. 21 C.F.R. Section 101.82(c)(iii)(A). The food label is permitted to boast that "25 grams of soy protein a day, as part of a diet low in saturated fat and cholesterol, may reduce the risk of heart disease." 21 C.F.R. Section 101.82(e)(1). Additionally, the plaintiffs do not seriously dispute that soy is served in schools, is part of some infant formulas, and is, in the defendants' words, "ubiquitous in the American diet." (Braunschweig Aff. para. 8.) A walk down the grocery aisle confirms this.

Someday soy may be widely established as a serious risk to general health and public opinion may change, like it did with exposure to second-hand smoke, but that day is not today. Today, serving soy to prisoners could not be considered cruel and unusual punishment as a matter of law.

In any event, if the court is wrong, then qualified immunity protects the defendants from damages, and injunctive relief could only be granted as to the plaintiffs in this case, not for all IDOC prisons, since this is not a class action.

To defeat qualified immunity from damages, "[a] plaintiff must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008)(citation omitted). The plaintiffs offer no case from *any* jurisdiction which concludes that soy presents a substantial risk of serious harm, nor has the court found any case. In fact, the cases this court has found which rule on the merits have either dismissed the claim at the notice pleading stage or have found against the plaintiffs at the summary judgment stage. *Adams v. Talbor*, 2013 WL 5940630 *2 (C.D. Ill.)(dismissing soy claim at merit review stage for failure to state a claim and listing other cases); *Smith v. Rector*, 2013 WL 5436371 (S.D. Ill.)(prisoner's "vague allegations that the prison meals are nutritionally inadequate or depend too heavily on soy products do not support a constitutional claim."); *Hong v. McNeil*, 2012 WL 512688 (N.D. Fla. 2012)("The evidence reveals that while prisoners are served food which contains soy,

the food is safe, provides no serious health risks, and has been shown to be beneficial to reduce cholesterol and the risk of heart disease.")(citing other cases in Northern District of Florida)[2]; *Mitchell v. New York State Dept. of Correctional Services*, 2012 WL 6204205 (W.D.N.Y. 2012)(dismissing as frivolous prisoner's claim that soy in diet causes cancer).

## II. The plaintiffs do not have soy allergies, which moots the second and third issues identified in the court's case management order.

One of the plaintiffs, Larry Harris, asserts that he does have a soy allergy, but the defendants' evidence shows that Harris has tested negative for a soy allergy. (Harris 4/20/07 medical progress note, 457-2, p. 2.) None of the other plaintiffs appear to contend that they have a documented allergy to soy. Consequently, the court believes that issues 2 and 3 identified in the prior case management order are moot. The parties are free to correct the court at the status conference if this is not the case.

## III. What is left of this case is unclear.

---

[2] Unlike this case, the inmates in *Hong* could choose an alternative meal to avoid the soy.

The Court holds today that the plaintiffs have not established that the soy in the prison diet, as a general matter, presents a serious risk of harm to the plaintiffs' current or future health, absent some serious, existing medical condition for which soy is contraindicated according to current generally accepted professional judgment.

The plaintiffs do not have soy allergies, goiter, or kidney stones, but two of the plaintiffs do have thyroid disorders, Larry Harris and Gilbert Sanabria, and the plaintiffs do have some evidence that soy can cause or exacerbate thyroid problems. Injunctive relief is moot for Mr. Harris who is already receiving a soy free diet, but injunctive relief might be available for Mr. Sanabria, and a damages claim may remain.

The Court does wonder how deliberate indifference can be established if these claims do remain, even accepting the opinions by the plaintiffs' experts. The plaintiffs would still have to prove that the treatment decisions by the doctors were "such a substantial departure from accepted professional judgment that the decisions were not based on professional judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The plaintiffs' experts acknowledge that there could be many causes of the ailments suffered by the plaintiffs. A professional difference of opinion on the most likely cause of

those ailments and the how the conditions should be treated would not be enough to show deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 681 (7th Cir. 2008)(no deliberate indifference where doctor "tried to cure what he thought was wrong . . ., an opinion he arrived at using medical judgment"); *Norfleet v. Webster*, 439 F.3d 392, 396, 396 (7th Cir. 2006)("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference.").

However, the issue of deliberate indifference has not yet been addressed by the parties. Additionally, the complaint also makes out claims for retaliation and negligence. A status hearing will be scheduled to sort through what issues remain.

**IT IS THEREFORE ORDERED:**

1. Defendants' motions for summary judgment are granted (432, 446).

2. Plaintiffs' motion for partial summary judgment is denied (436).

3. The motions to exclude expert reports are denied as moot (434, 444, 445, 447).

4. The motion to extend is denied as moot (450). The Court has considered all the submissions.

5. The motions to strike the internet articles submitted by Wexford, et al., are granted (461, 462). The court has not considered the articles.

6. The motion to join in the case by inmate Coleman is denied (431).

7. A status conference is scheduled for October 30, 2014, at 11:00 a.m. by video conference.

Entered this 30 day of September, 2014.

     s/Harold A. Baker
    HAROLD A. BAKER
  UNITED STATES DISTRICT JUDGE